

# SUPREME COURT OF ARKANSAS

No. CV-11-403

| | |
|---|---|
| ROMARIO VERMOND WALLER<br>APPELLANT<br><br>v.<br><br>JAMES BANKS, WARDEN; DARRYL GOLDEN, ASSISTANT WARDEN; CURTIS MEINZER, DEPUTY WARDEN; D. COMPTON, VARNER REHAB PROGRAMS MANAGER; WENDY KELLEY, DEPUTY DIRECTOR; LARRY MAY, DEPUTY DIRECTOR; ROSLYN WILLIAMS, CORRECTIONAL OFFICER; AND CARMICKLE, CORRECTIONAL OFFICER<br>APPELLEES | **Opinion Delivered**  October 10, 2013<br><br>PRO SE APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT, 40LCV-10-112, HON. JODI RAINES DENNIS, JUDGE<br><br><br><br>AFFIRMED. |

**PER CURIAM**

While an inmate at the Varner Supermax Unit (VSM) of the Arkansas Department of Correction (ADC), appellant Romario Vermond Waller filed a pro se civil rights action against various prison officials pursuant to the Arkansas Civil Rights Act, Arkansas Code Annotated section 16-123-105 (Repl. 2006). Among other challenges to the VSM Incentive Level Program, appellant alleged that his placement in the program constituted a violation of his rights to due process and equal protection under the Arkansas Constitution. The trial court dismissed appellant's complaint with prejudice based on the failure to exhaust administrative remedies and the failure to state a claim upon which relief could be granted, and appellant lodged this appeal

of the order.[1] We affirm the dismissal of the complaint.

On October 12, 2009, while an inmate in the East Arkansas Regional Unit (EARU), appellant stabbed a correctional officer in the chest with a piece of fence wire. As a consequence of the assault, appellant was issued a Notice for Supermax Placement. Following a hearing, the EARU Classification Committee recommended that appellant be placed at VSM, and appellant was given notice of the committee's decision. Upon transfer from EARU to VSM, appellant was temporarily housed in administrative segregation. At his November 2, 2009 hearing before the VSM Classification Committee, appellant informed the committee that he had assaulted the officer because he lost his temper. Subsequently, the committee assigned appellant to the VSM Incentive Level Program. The Placement Review document in the record provides that, at the review, appellant was given a copy of the VSM handbook and advised that he had fifteen days to appeal his placement.[2] While the record includes a number of grievances filed by appellant stemming from his placement in the Program, it does not include an appeal of the committee's placement decision.[3]

---

[1]In his complaint, appellant sought class certification for each of his claims. Because the trial court dismissed his claims, it did not make a finding as to class certification. We do not address the issue on appeal.

[2]The Placement Review does not specifically indicate that appellant was assigned to the VSM Incentive Level Program; however, the record includes a series of grievances filed by appellant, beginning May 6, 2010, in which he referred to being placed in the Incentive Level Program.

[3]In his reply brief, appellant attaches documents in an attempt to support his argument that he appealed his placement. This court does not consider matters outside the record. *Clark v. Pine Bluff Civil Serv. Comm'n*, 353 Ark. 810, 120 S.W.3d 541 (2003); *Boswell, Tucker & Brewster v. Shirron*, 324 Ark. 276, 279, 921 S.W.2d 580, 581 (1996) (declining to consider an affidavit attached to an appellate brief).

SLIP OPINION

On September 14, 2010, appellant filed a complaint pursuant to the Arkansas Civil Rights Act, alleging that his placement in the VSM Incentive Level Program violated his rights guaranteed by the Arkansas Constitution, including the rights to due process and equal protection. He also asserted a number of other claims based on the content and procedures of the Program.[4] The trial court dismissed the complaint with prejudice and found that appellant had failed to exhaust his administrative remedies and failed to state a claim upon which relief could be granted.[5] On appeal, appellant argues that the trial court erred in finding that he failed to exhaust his administrative remedies because he filed a series of grievances in which he lodged complaints regarding his placement. He also asserts that a violation of his right to due process under the Arkansas Constitution occurred when he was assigned to the VSM Incentive Level Program without notice or a hearing. He contends that his right to equal protection was violated because, as a result of his assignment to the Program, he is being treated differently than other inmates at VSM as well as female inmates incarcerated in other prison facilities in Arkansas. Finally, appellant argues that the VSM Incentive Level Program is an unauthorized mental-health program in violation of Arkansas Code Annotated section 12-29-405 (Repl. 2009), that the Program's disciplinary procedures constitute cruel and unusual punishment in violation of the Arkansas Constitution, and that its programming violates his right to freedom of expression and

---

[4]All arguments made below but not raised on appeal are abandoned. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam); *Shipman v. State*, 2010 Ark. 499 (per curiam) (citing *State v. Grigsby*, 370 Ark. 66, 257 S.W.3d 104 (2007)).

[5]In their answer, appellees alleged that dismissal of the complaint is proper because they are immune from suit. The trial court did not make a finding on the issue of immunity in its order, and we do not address the issue on appeal.

SLIP OPINION

religion.

As an initial matter, appellant contends that the trial court erred in dismissing his complaint based on the failure to exhaust administrative remedies. Specifically, he argues that the series of grievances that he filed stemming from his placement in the VSM Incentive Level Program satisfied the requirement that he exhaust his administrative remedies before he was entitled to judicial review.[6] However, it is not necessary to consider whether appellant sufficiently exhausted his remedies, or even whether such exhaustion of remedies is necessary under the circumstances of this case. In cases in which an inmate challenges ADC procedures and rules, he must raise a constitutional question sufficient to raise a liberty interest merely to fall within the classification of claims subject to judicial review. *Renfro v. Smith*, 2013 Ark. 40 (per curiam); *Munson v. Ark. Dept. Of Correction*, 375 Ark. 549, 294 S.W.3d 409 (2009) (per curiam). We have consistently recognized that due to their specialization, experience, and greater flexibility of procedure, administrative agencies are better equipped than the courts to analyze legal issues dealing with their agencies. *Smith v. May*, 2013 Ark. 248 (per curiam); *Crawford v. Cashion*, 2010 Ark. 124, 361 S.W.3d 268 (per curiam). Specifically, the administration of prisons has generally been held to be beyond the province of the courts. *Smith*, 2013 Ark. 248; *Crawford*, 2010 Ark. 124. Thus, we have consistently declined to dictate the operation of the ADC except in circumstances where the appellant asserts an infringement on constitutional rights. *Smith*,

---

[6]Pursuant to Arkansas Code Annotated section 25-15-212 (Repl. 2002) of the Arkansas Administrative Procedure Act, any person "except an inmate under sentence to the custody of the Department of Correction" is entitled to seek review of an agency's final decision within 30 days after the agency's service of the decision. However, in *Clinton v. Bonds*, 306 Ark. 554, 816 S.W.2d 169 (1991), this court held that the Act was unconstitutional to the extent that it deprived inmates of review of constitutional questions.

2013 Ark. 248; *Crawford*, 2010 Ark. 124. Because appellant has failed to raise a legitimate constitutional question, dismissal of his claims with prejudice was proper.

In contending that the ADC infringed on his constitutional rights, appellant first argues that a violation of his right to due process occurred based on the ADC's alleged failure to provide him with notice or a hearing before assigning him to the VSM Incentive Level Program. In the eighteen-month Program, assigned inmates are expected to participate in programming as well as follow ADC rules and regulations to progress through the Program's five levels. According to the ADC, programming, which consists of viewing videos and answering questions about the material, is designed to rehabilitate inmates by building character, developing coping skills, and teaching socially acceptable ways of behaving.[7] In his brief, appellant states that inmates assigned to the Program are subject to longer periods of privilege loss for disciplinary infractions than other VSM inmates,[8] but he acknowledges that all VSM inmates, including those assigned to the Program, receive the same treatment in other areas, including access to mail,

---

[7]While appellant also contends that the Program requirement of viewing the videos and answering the follow-up questions violates his right to freedom of expression and right to freedom of worship, he fails to make any convincing argument. This court does not consider an argument, even a constitutional one, if the appellant makes no convincing argument or cites no authority to support it, and it is not apparent without further research that the appellant's argument is well taken. *Nelson v. State*, 2011 Ark. 429, 384 S.W.3d 534. In his brief, appellant makes only a conclusory allegation that the Program requirement violates such rights; however, he provides no convincing argument to support his claim.

[8]Appellant also claims that this disparity in sanctions for inmates assigned to the Program and other VSM inmates constitutes cruel and unusual punishment. As a general rule, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Smith*, 2013 Ark. 248. Here, appellant does not demonstrate that any of the named appellees knew of and disregarded an excessive risk to his health and safety; thus, he fails to state facts to support a claim of constitutional infringement as a result of cruel and unusual punishment.

visitation escort, phones, library, recreation, and medication.[9]

To succeed on his due-process claim, appellant must first demonstrate that he was deprived of a liberty interest when he was assigned to the VSM Incentive Level Program. Because appellant was not deprived of a liberty interest when he was assigned to the Program, he cannot show that the process that he was provided was inadequate. In the prison context, the deprivation of a liberty interest is created by the imposition of an atypical and significant deprivation that was a dramatic departure from the basic conditions of confinement. *Sandin v. Connor*, 515 U.S. 472, 484 (1995); *Crawford*, 2010 Ark. 124, 361 S.W.3d 268 (no due-process violation based on ADC officials refusal to change appellant's housing or working assignments); *Munson*, 375 Ark. 549, 294 S.W.3d 409 (loss of class status and privileges do not comprise a liberty interest); *see also Smith*, 2013 Ark. 248 (no protected right or interest in a particular classification status or that status's privileges); *Renfro*, 2013 Ark. 40 (claim of loss of privileges is insufficient to assert deprivation of a liberty interest). Because the assignment to the VSM Incentive Level Program cannot be considered a dramatic departure from the ordinary incidents of prison life, appellant failed to state a deprivation of a liberty interest as necessary to claim a due-process violation based on lack of notice and a hearing.

In his brief, appellant describes the VSM Incentive Level Program as a behavior-

---

[9]Claiming that the VSM Incentive Level Program was a treatment for mental illness, appellant also argues that the administering of the Program violates Arkansas Code Annotated section 12-29-405, which authorizes the ADC to develop in-house due-process procedures for the treatment of inmates with mental illness at the facilities and programs of the Mental Health Services Section of the Division of Health Treatment Services of the ADC. However, the record does not support appellant's claim that the Program is a treatment for mental illness, as necessary to implicate section 12-29-405.

modification program in an apparent attempt to bring his case within a class of cases that rely

on the holding in *Vitek v. Jones*, 445 U.S. 480 (1980). In *Vitek*, the United States Supreme Court

held that a liberty interest was triggered by the classification of an inmate as mentally ill followed

by the involuntary commitment of the inmate to the state mental hospital for psychiatric

treatment. The Supreme Court noted that the stigmatizing consequences of the commitment

and treatment are not within the conditions of confinement to which a prison sentence subjects

an individual. *Vitek*, 445 U.S. at 494. The fallacy in appellant's argument is that, while the

Supreme Court used the term, "behavior modification," to describe the psychiatric treatment

that the inmate would receive during his involuntary commitment to the mental hospital,

"behavior modification" can be used to describe a vast variety of programs and treatments. The

VSM Incentive Level Program, as described in the record, is not comparable to involuntary

psychiatric treatment at a mental hospital.[10]

Appellant next alleges gender discrimination based on his argument that the VSM

Incentive Level Program violates his right to equal protection because there is no similar

---

[10]Similarly, appellant cites *Clonce v. Richardson*, 379 F. Supp. 338 (W.D. Mo. 1974), in which the Western District Court of Missouri considered whether the transfer of aggressive inmates to the S.T.A.R.T. program at the Medical Center for Federal Prisoners at Springfield, Missouri invoked due-process protections. Based on the specific restrictions and regulations imposed on the S.T.A.R.T. inmates, as compared to the restrictions and regulations imposed on other inmates in segregation, the district court found that the program involved major changes in the conditions of confinement. As in *Vitek*, the term, "behavior modification," is used to describe the program at issue; however, appellant does not provide factual support for his claim that the S.T.A.R.T. program and the VSM Incentive Level Program are sufficiently similar to support his argument that the VSM program is a dramatic departure from prison life. To the extent that the holding in *Clonce* is inconsistent with the holding herein, we note that *Clonce* is not mandatory authority and that we are not persuaded by its reasoning.

SLIP OPINION

program for female inmates imprisoned in Arkansas.[11] He also contends an equal-protection

violation on the basis that he is not being treated similarly to VSM inmates who have not been

assigned to the Program. Equal protection under the law is guaranteed by article 2, sections 2,

3, and 18 of the Arkansas Constitution. However, a viable equal-protection claim requires a

showing that appellant is similarly situated to those he claims are receiving favorable treatment.

*See McWilliams v. Pope Bd. of Equalization*, 2012 Ark. 427, __ S.W.3d __. Moreover, equal

protection does not require that persons be dealt with identically; it requires only that

classification rest on real and not feigned differences, that the distinctions have some relevance

to the purpose for which the classification is made, and that their treatment be not so disparate

as to be arbitrary. *Dukes v. Norris*, 369 Ark. 511, 256 S.W.3d 483 (2007) (per curiam). As to

appellant's claim that an equal-protection violation has occurred based on the absence of an

Incentive Level Program for female inmates, appellant fails to present any factual basis to

support a finding that male inmates and female inmates are similarly situated. *See Keevan v. Smith*,

100 F.3d 644 (8th Cir. 1996) (considering number of female and male inmates, average duration

of sentence served by males and females, number of inmates of each sex assigned highest

security classification, and crimes committed by male and female inmates to determine that male

and female inmates are not similarly situated for purposes of an equal-protection comparison

of prison educational programs and prison industry employment). Appellant also fails to state

facts to support a finding of an equal-protection violation based on the disparity in treatment

---

[11]Appellant also cites Arkansas Code Annotated section 16-23-107 (Repl. 2006) of the Arkansas Civil Rights Act of 1993 in support of a conclusory allegation of gender discrimination; however, he states no facts to support a claim that he was treated differently because of his gender such that section 16-123-107 is not implicated.

of VSM inmates, who have been assigned to the Incentive Level Program, and other VSM inmates. The distinction in the treatment of the two groups is clearly justified. An inmate is assigned to the Program as a result of demonstrating behavior problems while incarcerated, and the Program is designed to assist him with rehabilitation based on the demonstrated behaviors. Therefore, appellant did not state a constitutional infringement based on a violation of equal protection, as necessary to fall within the exception to our general rule that we do not substitute our judgment for that of the prison administration. *See Dukes*, 369 Ark. 511, 256 S.W.3d 483.[12]

Accordingly, because appellant failed to raise any legitimate constitutional issue in his petition, we affirm the trial court's dismissal of the complaint with prejudice based on his failure to state a claim for relief.

Affirmed.

*Romario Vermond Waller*, pro se appellant.

*Dustin McDaniel*, Att'y Gen., by: *Christine A. Cryer*, Ass't Att'y Gen., for appellee.

---

[12]As part of his equal-protection argument, appellant asserts a violation of a "fundamental right." We find no basis for this argument. Additionally, appellant cites *Canterino v. Wilson*, 546 F.Supp. 174 (W.D. Ky. 1982) in support of his equal-protection claim; however, the decision was vacated and remanded by the Sixth Circuit Court of Appeals in *Canternino v. Wilson*, 869 F.2d 948 (6th Cir. 1989).